UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE

2018 MAY 29  PM 3: 30

S.D. OF N.Y.

JOEL A. by his next friend Jonathan Cole;
MICHAEL D. by his next friend Elise Harris;
RAY D. and ERIC R. by his next friend Jewel Davis;
MAX R, DAVID S. by his next friend Michael Williams,

99cv 326

V

**CLASS ACTION**

Rudolph Giuliani et al

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___5/29/18___

## Motion to vacate settlement, replace counsel; proceed with individual claims against the Defendant's pro se.

I am Mariah Lopez, and I am seeking to have the settlement set aside, and to be granted permission to proceed with individuals claims against the Defendants pursuant to Section 60 (b)(6) of the U.S. Federal Code.

I am a member of the above Class action and charge that the settlement was unauthorized and, the minor children involved (myself included) had no knowledge of their rights under Federal Procedure at the time, and therefore had no way of following any statutory obligations to pursue a challenge of their representation or the court ruling within a certain period of time. The period of time between when the case was settled and this motion is irrelevant, since the rights of the Class were entrusted to lawyers for the youth cited as part if the Class

I am asserting my claims now, some twenty years since lawyers from Paul Weiiss and the Urban Justice Center sought to form a class of GLBTQ youth abused and and neglected by the Defendants refusal to acknowledge and address the existence of Gay, Lesbian Bisexual and Transgender youth in their care, because only now have I realized the errors of law which occured and the extent of my damages as a result of the collective actions of the Defendants.

I am also seeking to have Paul Weiss Rifkind Wharton & Garrison removed as counsel for the Plaintiff Class and/or myself, so that I may move forward pro se in any and all proceedings.

Counsel was ineffective in their duties to the minor children involved in the case,  and failed to execute their duties under Section 17 of the U.S. Federal Code. Also, lawyers for the class should have appealed the ruling by this court finding that Queer foster youth were covered and

1

protected under the Marisol case; Next Friends and Paul Weiss misrepresented facts about the level of relationships between Next Friends approved by the court and the youth. Many youth never met their Next Friends, or only met them as a matter of formality

This court should grant my request for relief, turning back the clock essentially, allowing me the chance reassert my claims, and to challenge the court's ruling blocking the Joel A case from going forward; or challenge the legality and validity of the Joel settlement itself.

The Defendants NEVER asserted the allegations to be untrue, just that Marisol was broad enough to address the claims


**Why this case and the circumstances surrounding it, meet the "exceptional**

**circumstances" requirement for relief under 60 (b)(6).**


1. ***This motion to vacate the settlement on grounds that it was unauthorized (among other claims) was brought as soon as was conceivably possible, once I learned the full extent of my injuries**- My injuries...and the injuries suffered by hundreds if not thousands of GLBTQ youth in foster care have only recently became fully apparent, since they are now the cause limitations in life activities. There are lingering permanent medical consequences I am now faced with in adulthood which are are not new; were raised as alarming and in need of daylight some twenty years ago. Many of the injuries are just becoming apparent to the adults who were minor children at the time.*
2. *The events of 9/11/2001 created a scenario which no American could have foreseen, directly during the period in which Queer youth who wished to challenge Joel A or Marisol would would have needed to raise challenges to the settlement of the court's ruling blocking Joel. This court not allowing arguments today, some near twenty later, on how 9/11 may have impacted litigants access to the court or their Next Friends, would be a slap in the face to not only the Plaintiffs in Joel case and all Queer kids in care, but also all who suffer from PTSD due to 9/11. The occurrence of 9/11 during the period which the Defendants were charged with cleaning up their act meant that the courts and the legal system as a whole was not in a duty to function as Constitutionally and legally required. ACS and OCFS got away with harsh abuse and neglect of Queer youth in their care during this period. This loophole of legal accountability for the bads acts of the Defendants due to the largest terrorist attack in modern human history is by definition exceptional, and this court should grant relief pursuant to 60 (b)(6)*
3. *2. F**actual and legal questions concerning violations of the minor Plaintiff's rights under 17 (c)(2) exist**- These questions include if the court, from the outset of the case, fulfilled its role in protecting the rights of the minors of the class under 17 (c)(2). Next Friends of minor children who were the Plaintiffs in Joel A, failed to execute their duties under the law, and the court appears not to have taken interest in the status of the minor*

2

Plaintiffs throughout the brief life of the case, as the smallest inquiry would have revealed troubling and abusive conditions still faced by a majority of the Joel A Plaintiffs. These failures of the Court, the Next Friend, and and counsel for the minor Plaintiffs of record at the time, constitutes justification to review the settlement, regardless of the amount of time which has elapsed.

4. **The Joel A case and it's claims against the Defendants, are exceptional and unusual in every respect, especially in light of how the case changed foster care across the State, with little to no relief for actual youth in care at the time-** *The case of the Joel A kids is exceptional for how they suffered posts settlement, and only seek to reclaim our narratives. Unlike similar controversies involving minor children who grow into adults and seek relief in civil court such as the Catholic Church scandal, these young people did not wait decades to allege physical trauma, molestation and rape; did not wait to call out their "parents" for abuse; instead we/they did speak up within the statute of limitations; the abuse and the names of the abusers are well documented. These facts make circumstances of the case are expeceptional to say the least (*foster youth who in 1998/99, existed within a then taboo demographic of service needs and experiences, who sued publicly for the most private and devastating of abuses; sued the state, their guardians). Subsequent shifts in societal views of GLBTQ issues (especially youth and families), can be traced to the negative press around the Joel A case and complaint, and the pressure on officials to make it go away. Foster kids being abused softened how the public viewed the issues of GLBTQ people as a whole; making this case "exceptional". It was the "Brown v Board of Education" of Queer youth issues, sparking change for Queer adults as well.*

5. **4. The Defendants basically got away with the conduct outlined in Joel A-** *agreeing to make changes which they were obligated to already under the law, or as a part of reforms brought on by cases such as Marisol. The Defendants basically faced zero legal consequences for being responsible for the unspeakable suffering of hundreds of kids. This suffering left a physiological imprint on the brain structures and internal chemistry of the then minor Plaintiffs, not adults.*

6. **5. Joel A settlement was inequitable, failing to truly be in the best interest of or address the issues of Queer youth in foster care who were a part of the class, or were in foster care at the time-** *The settlement is against the public interest of an open and transparent judiciary, which protects the interests of minor litigants, whether part of a class action or not. Minor Plaintiffs in Joel A were basically shut out of court, and were not represented fairly. Hundreds of children, now adults, were not included in the original case or settlement or negotiations therein. The settlement which ended the case, was not equitable to the Plaintiffs, and lawyers for the class failed to include or make reasonable attempts to identify and locate, hundreds of other GLBTQ youth in foster care at the time who were unaware of the proceeding and their rights to bring claims for damages and other relief against the Defendants.*

7. **Defendants continued their pattern of abuse and neglect during the proceedings, never negotiated in good faith, violated settlement immediately-** *I personally was sexually abused while in a facility that was opened to house Queer youth as a part of the*

3

*Joel A settlement. The failure of the Defendants to keep me safe from the very types of sexual abuses outlined in the Marisol AND Joel A cases; in the direct wake of the of the Joel case. This neglect and abuse represent a violation of terms of any lawful settlement which the Defendants were legally bound by. The pattern of abuse and neglect by the Defendants towards GLBTQ children and adolescents, continued past the filing of Joel A, lasted during the settlement. This abuse and neglect no doubt influenced the state of the minors involved in settlement negotiations, and continued for at least a decade after minors agreed to settle Joel a, giving up their claims. These actions represent a failure of the Defendants to ever have negotiated in good faith, as well as a violation of any so called settlement involving the parties in this case.*

8. **The Joel A settlement neglected the needs and abuses unique and specific to Transgender youth in foster care, creating a new, separate issue of whether the settlement itself occured legally under 17 (c)(2); did not "protect" Trans youth-** *There is a question as to whether or not the failures by counsel for the youth to familiarize themselves with Trans issues, or the court to supervise the settlement process in a way which took into account the needs of the youth in question long term, is a failure of the court or parties to adhere to 17 (c)(2). Lack of Trans issues as a part of the record or factored into the settlement more robustly, demonstrates the haste and professional ignorance of Trans issues at the time, which makes the original settlement inequitable and unfair...morally, legally and ethically. Brown v Board of Ed' was decided in large part by evidence presented by youth experts. Trans youth are different than non gender variant youth in the need of medical experts to inform and craft their treatment and best childcare practices. The settlement process was devoid of such Trans youth or Trans healthcare expertise. Trans youth who are now adults with permanent injuries because of the actions of the Defendants, should be allowed to have their day in court. The very failure to understand Trans issues by 'adults' by many adults and the public at large at the time at the time,  is what lead to Trans youth to seek justice under Joel A; but Trans youth and Gay youth have vastly different needs, legally and medically. As such, their needs within any settlement needed to have been assessed separately from other non Trans youth. This is because, if Marisol did not cover a group a particular group, its Transgender youth in foster care. The Marisol case was too broad to be viewed as covering Trans youth issues. It was the job of lawyers at the time, as well as the court, to protect the interests of Trans youth in care or who were a part of the class permitted in Joel A. The original Joel A case refers to Transgender youth, yet the facts will show that all of the "adult" professionals at the time; from the court to the lawyers for the youth, failed to drive home the issues of the Transgender minors in care, or the foreseeable consequences on the lives of these youth, as a result of the continued actions on the part of the Defendants. The most daunting milestones for Trans youth in foster care are: aging out of foster care, as well as affording expensive medical treatment which is such a critical factor in whether a youth "makes it" or not; in whether a Trans youth in care is given the best chance to leave care and adapt to life post foster care, Trans teens of sexual maturity, and who are aging out of foster care have special needs, and these needs were not addressed under Joel A, and the changes in Trans*

*civil rights should give cause for this court to allow Trans individuals neglected by the Joel A settlement to pursue civil claims, if these claims are based on injuries which are well documented at the time of Joel A and throughout Trans youth's placement under the control of the Defendants. \*Sexual maturity (the onset of puberty; or around the age of legal consent) is the point at which most medical treatment for Trans youth begins or escalates. Joel A should have done more to at least elevate or address the needs issues and concerns of Trans youth in care, if the Defendants were unwilling to on their own. The lack of the settlement or the court itself, to take into account these factors, is proof positive of the process surrounding Joel A failure to represent the issues and interests of Trans youth in foster care at the time; including and especially duties of the Defendants relating to the continued medical treatment for Trans youth, as well as the Defendants duties and failures to provide services meant to ensure Trans youth are not discharged into homelessness. Failures of the Defendants provide these services, and failures of the court and then counsel for the Plaintiffs to vigorously defend Trans youth who were a part of the Joel A class and who face lifelong disability as a result of abuse or neglect while in the custody of the Defendants, should mean Trans Plaintiffs should be granted relief under 60 (b)(6), for failures of all adult parties at the time under 17 (c). The amount of money spent by the Defendants to settle the Joel A case at the time, was a drop in the bucket in terms of the costs ACS now covers for Trans youth who undergo medical treatment while in care. Ironically ACS was faced to pay for said medical care for Trans youth in their care, only after subsequent litigation on behalf of an individual Trans youth in care, which forced them to abandon policies which would easily be considered child abuse today, and which occurred in the wake of both the Marisol and Joel A settlements. Trans youth who were in care at the time simply lost their claims and right to call on ACS cover needed medical treatment under the Joel A settlement, and received nothing in return but further abuse and refusal by the Defendants to cover necessary medical treatment for Trans youth in their care; against the advice of child health experts.*

9. **The outcome of the Joel A case represents an unauthorized settlement under 60(b)(6) for failures of duty bound adults to carry out or adhere to the law pursuant to 17(c)(2), addressing the needs of Transgender and youth aging out of foster care (older teens, or those 21 or above).**

**Joel A, a Class of minors in the care and custody of the Defendants.**

This case (Joel A) is unique and exceptional for many reasons, and the ruling to block the shocking, jaw dropping new allegations (during Marisol) involving minor children is one of them. I do not believe the plaintiffs involved in the case, or potential class members, were ever made fully aware of the options and advantages to preserving their claims; not settling and pursuing further litigation. Most youth would have chosen to pursue claims or appeal this court's ruling blocking the case from moving forward if they had adequate counsel. Instead a powerful and prestigious firm mislead youth into believing their claims were dead in the water; not that there existed appellate and future private cause of action options for each and every class member. The representation to the youth by their attorneys at the time was a representation which was

procedurally untrue, and this representation  constitutes a failure of the youths lawyers to vigorously prosecute litigation, whether or not this litigation came with glory or immediate relief.

The Joel A Plaintiffs were a class of minor children who experienced unspeakable, horrific abuse at the hands of the Defendants because of their GLBTQ identity and gender/sex role expression. The abuse was outstanding and exceptional to begin with, and so were the minors who made up the class (coming "out" as GLBTQ while in foster care was dangerous at the time). The abuses and bad acts by the Defendants also lasted throughout the settlement negotiations, and lasted for decades afterwards.

The Joel A class was formed by a group of young GLBTQ foster kids willing to stand up and fight against their legal guardians, the Defendants, while the Defendants still controlled their fate. Also an exceptional fact.

The class and their claims were not allowed to proceed because this court ruled that the Joel A Plaintiffs and the relief they sought were covered under the Marisol case settlement.

The shifts in child welfare system resulting from the Joel A Class as it relates to GLBTQ youth, can be compared to changes in children's access to desegregated schools for African American students after the Brown v Board of Education.

The impacts of the cases on society are comparable in terms of helping usher in nationwide changes to how Queer youth issues were viewed and defended, yet, the Joel A Class was not represented by counsel versed in the medical knowledge necessary to mount a fair prosecution of the case; specifically and importantly Trans youth issues (among others).

Whether or not they intended to, and despite not receiving equitable relief themselves, the Plaintiffs in the case sparked a civil rights and social justice shift concerning GLBTQ rights, the consequences of which reach far beyond this case. By defiantly declaring to be "Queer youth" in foster care and in need of the court protection (a relatively radical concept and movement for the time) the Joel kids, not the adults associated with filing the case, helped change the course of history.

These youth were only able to make such a leap because of civil rights and social justice because of foundational conflicts that advanced civil rights prior to this case, such as the Stonewall rebellion and the mainstream Gay rights movement which followed. Nothing has changed but society's ability to be more tolerant, and less ignorant. The court should allow claims to move forward because Queer youth once in foster care or adults who asserted claims during Joel A negotiations are at the time of Marisol, should not be deprived their day in court.

The changes to the trajectory of New York's child welfare system because of this case, is also proof that the Plaintiffs claims were scandalous and sensational at the time (sparking 'voluntary'