SCANNED

RECEIVED
SDNY PRO SE OFFICE

2018 MAY 29  PM 3:30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOEL A. by his next friend Jonathan Cole;
MICHAEL D. by his next friend Elise Harris;
RAY D. and ERIC R. by his next friend Jewel Davis;
MAX R, DAVID S. by his next friend Michael Williams,

V

Rudolph Giuliani et al

99cv 326 (A TD)

**CLASS ACTION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 33
DATE FILED: 5 29 18

## Motion to vacate settlement, replace counsel; proceed with individual claims against the Defendant's pro se.

I am Mariah Lopez, and I am seeking to have the settlement set aside, and to be granted permission to proceed with individuals claims against the Defendants pursuant to Section 60 (b)(6) of the U.S. Federal Code.

I am a member of the above Class action and charge that the settlement was unauthorized and, the minor children involved (myself included) had no knowledge of their rights under Federal Procedure at the time, and therefore had no way of following any statutory obligations to pursue a challenge of their representation or the court ruling within a certain period of time. The period of time between when the case was settled and this motion is irrelevant, since the rights of the Class were entrusted to lawyers for the youth cited as part if the Class

I am asserting my claims now, some twenty years since lawyers from Paul Weiss and the Urban Justice Center sought to form a class of GLBTQ youth abused and and neglected by the Defendants refusal to acknowledge and address the existence of Gay, Lesbian Bisexual and Transgender youth in their care, because only now have I realized the errors of law which occured and the extent of my damages as a result of the collective actions of the Defendants.

I am also seeking to have Paul Weiss Rifkind Wharton & Garrison removed as counsel for the Plaintiff Class and/or myself, so that I may move forward pro se in any and all proceedings.

Counsel was ineffective in their duties to the minor children involved in the case,  and failed to execute their duties under Section 17 of the U.S. Federal Code. Also, lawyers for the class should have appealed the ruling by this court finding that Queer foster youth were covered and

1

protected under the Marisol case; Next Friends and Paul Weiss misrepresented facts about the level of relationships between Next Friends approved by the court and the youth. Many youth never met their Next Friends, or only met them as a matter of formality

This court should grant my request for relief, turning back the clock essentially, allowing me the chance reassert my claims, and to challenge the court's ruling blocking the Joel A case from going forward; or challenge the legality and validity of the Joel settlement itself.

The Defendants NEVER asserted the allegations to be untrue, just that Marisol was broad enough to address the claims

**Why this case and the circumstances surrounding it, meet the "exceptional circumstances" requirement for relief under 60 (b)(6).**

1. ***This motion to vacate the settlement on grounds that it was unauthorized (among other claims) was brought as soon as was conceivably possible, once I learned the full extent of my injuries-*** *My injuries...and the injuries suffered by hundreds if not thousands of GLBTQ youth in foster care have only recently became fully apparent, since they are now the cause limitations in life activities. There are lingering permanent medical consequences I am now faced with in adulthood which are are not new; were raised as alarming and in need of daylight some twenty years ago. Many of the injuries are just becoming apparent to the adults who were minor children at the time.*

2. *The events of 9/11/2001 created a scenario which no American could have foreseen, directly during the period in which Queer youth who wished to challenge Joel A or Marisol would would have needed to raise challenges to the settlement of the court's ruling blocking Joel. This court not allowing arguments today, some near twenty later, on how 9/11 may have impacted litigants access to the court or their Next Friends, would be a slap in the face to not only the Plaintiffs in Joel case and all Queer kids in care, but also all who suffer from PTSD due to 9/11. The occurrence of 9/11 during the period which the Defendants were charged with cleaning up their act meant that the courts and the legal system as a whole was not in a duty to function as Constitutionally and legally required. ACS and OCFS got away with harsh abuse and neglect of Queer youth in their care during this period. This loophole of legal accountability for the bads acts of the Defendants due to the largest terrorist attack in modern human history is by definition exceptional, and this court should grant relief pursuant to 60 (b)(6)*

3. *2. **Factual and legal questions concerning violations of the minor Plaintiff's rights under 17 (c)(2) exist-** These questions include if the court, from the outset of the case, fulfilled its role in protecting the rights of the minors of the class under 17 (c)(2). Next Friends of minor children who were the Plaintiffs in Joel A. failed to execute their duties under the law, and the court appears not to have taken interest in the status of the minor*

2

*Plaintiffs throughout the brief life of the case, as the smallest inquiry would have revealed troubling and abusive conditions still faced by a majority of the Joel A Plaintiffs. These failures of the Court, the Next Friend, and and counsel for the minor Plaintiffs of record at the time, constitutes justification to review the settlement, regardless of the amount of time which has elapsed.*

4. **The Joel A case and it's claims against the Defendants, are exceptional and unusual in every respect, especially in light of how the case changed foster care across the State, with little to no relief for actual youth in care at the time-** *The case of the Joel A kids is exceptional for how they suffered posts settlement, and only seek to reclaim our narratives. Unlike similar controversies involving minor children who grow into adults and seek relief in civil court such as the Catholic Church scandal, these young people did not wait decades to allege physical trauma, molestation and rape; did not wait to call out their "parents" for abuse; instead we/they did speak up within the statute of limitations; the abuse and the names of the abusers are well documented. These facts make circumstances of the case expeceptional to say the least (\*foster youth who in 1998/99, existed within a then taboo demographic of service needs and experiences, who sued publicly for the most private and devastating of abuses; sued the state, their guardians). Subsequent shifts in societal views of GLBTQ issues (especially youth and families), can be traced to the negative press around the Joel A case and complaint, and the pressure on officials to make it go away. Foster kids being abused softened how the public viewed the issues of GLBTQ people as a whole; making this case "exceptional". It was the "Brown v Board of Education" of Queer youth issues, sparking change for Queer adults as well.*

5. **~~4.~~ The Defendants basically got away with the conduct outlined in Joel A-** *agreeing to make changes which they were obligated to already under the law, or as a part of reforms brought on by cases such as Marisol. The Defendants basically faced zero legal consequences for being responsible for the unspeakable suffering of hundreds of kids. This suffering left a physiological imprint on the brain structures and internal chemistry of the then minor Plaintiffs, not adults.*

6. **~~5.~~ Joel A settlement was inequitable, failing to truly be in the best interest of or address the issues of Queer youth in foster care who were a part of the class, or were in foster care at the time-** *The settlement is against the public interest of an open and transparent judiciary, which protects the interests of minor litigants, whether part of a class action or not. Minor Plaintiffs in Joel A were basically shut out of court, and were not represented fairly. Hundreds of children, now adults, were not included in the original case or settlement or negotiations therein. The settlement which ended the case, was not equitable to the Plaintiffs, and lawyers for the class failed to include or make reasonable attempts to identify and locate, hundreds of other GLBTQ youth in foster care at the time who were unaware of the proceeding and their rights to bring claims for damages and other relief against the Defendants.*

7. **Defendants continued their pattern of abuse and neglect during the proceedings, never negotiated in good faith, violated settlement immediately-** *I personally was sexually abused while in a facility that was opened to house Queer youth as a part of the*

*Joel A settlement. The failure of the Defendants to keep me safe from the very types of sexual abuses outlined in the Marisol AND Joel A cases; in the direct wake of the of the Joel case. This neglect and abuse represent a violation of terms of any lawful settlement which the Defendants were legally bound by. The pattern of abuse and neglect by the Defendants towards GLBTQ children and adolescents, continued past the filing of Joel A, lasted during the settlement. This abuse and neglect no doubt influenced the state of the minors involved in settlement negotiations, and continued for at least a decade after minors agreed to settle Joel a, giving up their claims. These actions represent a failure of the Defendants to ever have negotiated in good faith, as well as a violation of any so called settlement involving the parties in this case.*

8. **The Joel A settlement neglected the needs and abuses unique and specific to Transgender youth in foster care, creating a new, separate issue of whether the settlement itself occured legally under 17 (c)(2); did not "protect" Trans youth-** *There is a question as to whether or not the failures by counsel for the youth to familiarize themselves with Trans issues, or the court to supervise the settlement process in a way which took into account the needs of the youth in question long term, is a failure of the court or parties to adhere to 17 (c)(2). Lack of Trans issues as a part of the record or factored into the settlement more robustly, demonstrates the haste and professional ignorance of Trans issues at the time, which makes the original settlement inequitable and unfair...morally, legally and ethically. Brown v Board of Ed' was decided in large part by evidence presented by youth experts. Trans youth are different than non gender variant youth in the need of medical experts to inform and craft their treatment and best childcare practices. The settlement process was devoid of such Trans youth or Trans healthcare expertise. Trans youth who are now adults with permanent injuries because of the actions of the Defendants, should be allowed to have their day in court. The very failure to understand Trans issues by 'adults' by many adults and the public at large at the time at the time,  is what lead to Trans youth to seek justice under Joel A; but Trans youth and Gay youth have vastly different needs, legally and medically. As such, their needs within any settlement needed to have been assessed separately from other non Trans youth. This is because, if Marisol did not cover a group a particular group, its Transgender youth in foster care. The Marisol case was too broad to be viewed as covering Trans youth issues. It was the job of lawyers at the time, as well as the court, to protect the interests of Trans youth in care or who were a part of the class permitted in Joel A. The original Joel A case refers to Transgender youth, yet the facts will show that all of the "adult" professionals at the time; from the court to the lawyers for the youth, failed to drive home the issues of the Transgender minors in care, or the foreseeable consequences on the lives of these youth, as a result of the continued actions on the part of the Defendants. The most daunting milestones for Trans youth in foster care are: aging out of foster care, as well as affording expensive medical treatment which is such a critical factor in whether a youth "makes it" or not; in whether a Trans youth in care is given the best chance to leave care and adapt to life post foster care. Trans teens of sexual maturity, and who are aging out of foster care have special needs, and these needs were not addressed under Joel A, and the changes in Trans*

*civil rights should give cause for this court to allow Trans individuals neglected by the Joel A settlement to pursue civil claims, if these claims are based on injuries which are well documented at the time of Joel A and throughout Trans youth's placement under the control of the Defendants. \*Sexual maturity (the onset of puberty; or around the age of legal consent) is the point at which most medical treatment for Trans youth begins or escalates. Joel A should have done more to at least elevate or address the needs issues and concerns of Trans youth in care, if the Defendants were unwilling to on their own. The lack of the settlement or the court itself, to take into account these factors, is proof positive of the process surrounding Joel A failure to represent the issues and interests of Trans youth in foster care at the time; including and especially duties of the Defendants relating to the continued medical treatment for Trans youth, as well as the Defendants duties and failures to provide services meant to ensure Trans youth are not discharged into homelessness. Failures of the Defendants provide these services, and failures of the court and then counsel for the Plaintiffs to vigorously defend Trans youth who were a part of the Joel A class and who face lifelong disability as a result of abuse or neglect while in the custody of the Defendants, should mean Trans Plaintiffs should be granted relief under 60 (b)(6), for failures of all adult parties at the time under 17 (c). The amount of money spent by the Defendants to settle the Joel A case at the time, was a drop in the bucket in terms of the costs ACS now covers for Trans youth who undergo medical treatment while in care. Ironically ACS was faced to pay for said medical care for Trans youth in their care, only after subsequent litigation on behalf of an individual Trans youth in care, which forced them to abandon policies which would easily be considered child abuse today, and which occurred in the wake of both the Marisol and Joel A settlements. Trans youth who were in care at the time simply lost their claims and right to call on ACS cover needed medical treatment under the Joel A settlement, and received nothing in return but further abuse and refusal by the Defendants to cover necessary medical treatment for Trans youth in their care; against the advice of child health experts.*

9. ***The outcome of the Joel A case represents an unauthorized settlement under 60(b)(6) for failures of duty bound adults to carry out or adhere to the law pursuant to 17(c)(2), addressing the needs of Transgender and youth aging out of foster care (older teens, or those 21 or above).***

**Joel A, a Class of minors in the care and custody of the Defendants.**

This case (Joel A) is unique and exceptional for many reasons, and the ruling to block the shocking, jaw dropping new allegations (during Marisol) involving minor children is one of them. I do not believe the plaintiffs involved in the case, or potential class members, were ever made fully aware of the options and advantages to preserving their claims; not settling and pursuing further litigation. Most youth would have chosen to pursue claims or appeal this court's ruling blocking the case from moving forward if they had adequate counsel. Instead a powerful and prestigious firm mislead youth into believing their claims were dead in the water; not that there existed appellate and future private cause of action options for each and every class member. The representation to the youth by their attorneys at the time was a representation which was

procedurally untrue, and this representation constitutes a failure of the youths lawyers to vigorously prosecute litigation, whether or not this litigation came with glory or immediate relief.

The Joel A Plaintiffs were a class of minor children who experienced unspeakable, horrific abuse at the hands of the Defendants because of their GLBTQ identity and gender/sex role expression. The abuse was outstanding and exceptional to begin with, and so were the minors who made up the class (coming "out" as GLBTQ while in foster care was dangerous at the time). The abuses and bad acts by the Defendants also lasted throughout the settlement negotiations, and lasted for decades afterwards.

The Joel A class was formed by a group of young GLBTQ foster kids willing to stand up and fight against their legal guardians, the Defendants, while the Defendants still controlled their fate. Also an exceptional fact.

The class and their claims were not allowed to proceed because this court ruled that the Joel A Plaintiffs and the relief they sought were covered under the Marisol case settlement.

The shifts in child welfare system resulting from the Joel A Class as it relates to GLBTQ youth, can be compared to changes in children's access to desegregated schools for African American students after the Brown v Board of Education.

The impacts of the cases on society are comparable in terms of helping usher in nationwide changes to how Queer youth issues were viewed and defended, yet, the Joel A Class was not represented by counsel versed in the medical knowledge necessary to mount a fair prosecution of the case; specifically and importantly Trans youth issues (among others).

Whether or not they intended to, and despite not receiving equitable relief themselves, the Plaintiffs in the case sparked a civil rights and social justice shift concerning GLBTQ rights, the consequences of which reach far beyond this case. By defiantly declaring to be "Queer youth" in foster care and in need of the court protection (a relatively radical concept and movement for the time) the Joel kids, not the adults associated with filing the case, helped change the course of history.

These youth were only able to make such a leap because of civil rights and social justice because of foundational conflicts that advanced civil rights prior to this case, such as the Stonewall rebellion and the mainstream Gay rights movement which followed. Nothing has changed but society's ability to be more tolerant, and less ignorant. The court should allow claims to move forward because Queer youth once in foster care or adults who asserted claims during Joel A negotiations are at the time of Marisol, should not be deprived their day in court.

The changes to the trajectory of New York's child welfare system because of this case, is also proof that the Plaintiffs claims were scandalous and sensational at the time (sparking 'voluntary'

reform by the Defendants), further proof why this court should grant this motion for relief, due to this cases exceptional nature.

The accusations were serious enough to shock ACS into allegedly changing policies and enacting system wide changes on their own. But based on the court's ruling (blocking Joel A due to Marisol) it would appear that the court did not deem the claims serious enough for youth to assert their rights; that extra care should have been given within any proceedings to ensure equality for all interested youth affected by the settlements, or to address the failures and actions of the Defendants going forward.

Another factor which makes this case unique and entitled to extraordinary consideration, is this court own role in the potential injustice concerning GLBTQ kids in foster care.

This Court supervised a settlement between counsel for the Plaintiffs and Defendants pursuant to Section 17 (c)(2).

Counsel for the Plaintiffs (as well as the Next Friend approved by the Court), failed to protect the interests of the minor Plaintiffs throughout the entirety of the litigation.

It was this courts role back in 1999, 2000 and in 2001, to ensure protect the interests by the appointment and approval of a Next Friend as well as only approving a fair settlement, since the children could never have been expected to participate fully in the case, or to have engaged lawyers who brought Joel A on their behalf; as minors in foster care. At the time of the settlement in the case several Plaintiffs suffered from impairments linked to injuries caused by the Defendants, which were the foundation for the case. These impairments may have influenced the youths decision making; many may have signed the settlement under duress, or felt pressured to sign the settlement out of desperation, seeking relief in in their living conditions.

The court failed to fulfill its duties under 17(c)(2), where the court was tasked with overseeing the appointment of a Next Friend meant "protect" the interests of the minor Plaintiffs in this matter. Slamming the door shut on the case did not mean slamming the door shut on the rights of the minor Plaintiffs to have their interests vigorously defended.

Even if the court was refusing to allow the case to proceed, the best interest of each and every individual minor child must have been protected and accounted for at the time, in order for any settlement approved by the court to be considered legal.

Protection by the court, under 17(c)(2) is meant to protect all minor plaintiffs, especially those who are orphans and who are wards of the state.

The protections of 17(c)(2) are not reserved only for minor children who ultimately succeed in winning their case. Instead, the section is meant bestow fairness protections  at the beginning stages of all cases involving minors who cannot defend themselves in Federal Court, even if the

case is prevented from proceeding ultimately based on procedural discretion on the part of the court. Joel A did not "go away" because the case lacked merit of the claims.

## The courts and Next Firends failures under U.S. 17.

At least one example of the court overlooking what should have been its basic role under 17(c)(2) is court approved Next Friend (now Dr.) Jonathan R. Cole's failure to execute his duties towards the minor plaintiff, which he purported to have a relationship with prior to the case. He had only met the child for the purpose of finaling the Next Friend documentation; no previous relationship existed between the child and (now) Dr Jonathan R. Cole. He also failed to follow up with ensuring the minor was safe and accounted for for the duration of the case.

Legal errors on the part of the court in a case involving horrific abuses of children in the states care (even if this conduct occurred some twenty years ago), is not a just cuase for this court deprive the Plaintiffs our day in Court. Kids in foster care did not "miss" any reachable deadline, and recalling extraordinary legal and judical errors is why 60 (b)(6) exists, giving the court discretion to address complex and unforeseen controversies.

This court should not underestimate the significance this case had on the issues of GLBTQ youth as an entire group; at the time however, the court's ruling to block the Joel A suit left hundreds of GLBTQ children in the custody of the Defendants without real change, lasting injuries, and stripped of claims prior to or included in Joel A and Marisol.

ACS and OCFS continued to neglect and abuse the very youth which made up the Joel A named class and hundreds more, for decades.

many in the Joel A class are only now realizing the extent of their injuries. This continued pattern, with lack of a similar case being brought, also makes this case and the circumstances surrounding it, unique.

Many individuals whose rights were not represented during the Marisol or Joel A settlements or cases, cannot and should not be faulted for not being scholars at the time and for not bringing pro se litigation challenging the process or courts rulings as minor youth still care directly after the settlements.

It is only today, for various reasons and factors that many adults (including myself), are now realizing the injustice of the court's ruling in the Joel A case and the failure of lawyers at the time to fight vigorously for our best interests at the time. Also, certain injuries are only now apparent in adulthood.

This court should view the circumstances of this case to be extraordinary and "exceptional", granting relief pursuant to Section 60(b)(6).

It is my desire to appeal this court's ruling blocking Joel A from proceeding because of the Marisol settlement. GLBTQ children, teens and young adults have vastly different needs, and therefore a different ittereatio of civil rights and access to equitable access to a safe child welfare system and the civil judicial process. I wish to appeal this court's ruling to not allowing Joel A to proceed as a class, separate and apart from Marisol.

I bring this action as a Transgender individual once child/youth in the care and custody of the Defendants; as a ward of the the Commissioner for the Administration for Children's Services; as well as a Juvenile Delinquent in the custody of the Office of Children's and Family Services. Between 1995 and 2006 the Defendants intentionally caused me permanent physical and psychological injuries. The Defendants and their agents enacted policies or engaged in a pattern of behavior which caused me lasting injuries.

I only became aware of the extent and diagnosis of my injuries caused by the Defendants recently, and pursuant to.

Severe physical, emotional and sexual abuse of minor children during the earliest periods in their lives , has been scientifically proven to cause life-long, permanent injury to those same individuals. Many of the symptoms suffered by many individuals, which make adjusting to life as an adult close to impossible, do not manifest or become most debilitating until adulthood.

ACS and and OFCS, if no other arms of state and local government, should be held to accountable for permanently injuring and scarring children and orphans. Children become adults, this is an inescapable fact, and there can be no doubt that there are certain injuries unique to adults, realized and apparent only after extended periods of time, that can be linked to the actions of the Defendants.

No other two agencies in New York besides ACS and OCFS bare such a responsibility to get things right. Holding ACES and OCFS legally accountable is the only true way to effect lasting change and for the Court to oversee justice for children and the child wild welfare system through the claims outlined in this twenty year old case.

Not allowing certain adults, where there is overwhelming evidence of physical, sexual and psychological abuse at the hands of he Defendants, to bring claims as adults under either Marisol or Joel A, would mean that there is no justice in Federal Court for those who have

9

injuries which become apparent only in adulthood after the abuse which lead to said injuries is well documented in childhood. How are kids supposed to navigate the Federal Court system?

Science is clear that normal human brains are not fully developed until roughly 23-25 years of age; science is also clear that childhood trauma changes the brains of the individuals experiencing said trauma.

There is a direct link between mental and physical abuse injuries in children leading to lifelong pain, suffering, and psychological dysfunction. This lifelong pain, suffering, and psychological dysfunction has lead to hundreds of Queer youth who were not represented or poorly represented under Joel A, to suffer throughout out their time in care. These same youth and adults continue experience nightmarish post foster care existence, including myself .
I ask the Court to consider allowing claims of adults who experienced unique injuries as a result of the actions of the Defendants, to go forward. Quantum mechanics prevents young people from foreseeing the long term yet devastating medical consequences of child abuse they suffer.

 The court in its failure to carry out its duties under section 17,  as well as for the Defendants and counsel representing the class and the Plaintiffs.(The adults involved in the original matter, however professional and well intended they were, failed to live up to their duties to the children who relied on them to protect and defend their rights, interests and the law).


**RELIEF**

Because there is ample evidence that the settlement was not equitable, and that the law was not followed where protecting the interests of the minor Plaintiffs was concerned, and becuase the settlement was unauthorized, I ask this court to vacate the judgement approving the settlement.

Further, I ask this court allow me to remove Paul Weiss Rifkind Wharton and Garrison as counsel lead counsel of record in the Joel A matter, so that myself and others, may proceed pro se with claims filed within Joel A., or within individual private civil actions.

Mariah Lopez

May 29711 2018

(212) 470 9687