**RE: 99_cv_326, Joel A v Giuliani.**

**Letter To The Court; this document is NOT a Motion or a complaint.**

Dear Judge Nathan,

**This letter is not meant to replace the motion that I filed last week. I am only providing the court with the extensive, but necessary, background for why Section 60 should and must apply. My true story contained within this letter is the definition of exceptional.**

I am writing this letter to inform the court that I am in fact the lead plaintiff, "Joel A", in the case **Joel A v Giuliani**.

I was born Brian Joel Lopez, on April 27th 1985, and placed in the care of the Defendants for the first time in 1994 after my maternal grandmother fell ill. I experienced abuse at the hands of the Defendants almost immediately that continued for years.

The facts laid out in this letter will demonstrate my arguments for allowing Trans individuals to pursue claims separately, as a group not fairly represented in the case, and that the Next Friend's and courts actions under section 17 were not only ineffective but violated statute.

My request for relief and to restore this case to the status quo are with merit.

In addition to my actual story and experiences, I also ask that this court consider my role in this case as exceptional, for, without my involvement as Joel A, the case may never have been filed.

My very young age at the time, combined with me extraordinary story, was undoubtedly a factor in why Paul Weiss took on the case on a pro bono basis (which is the only reason ACS ever even acted like they cared about GLBTQ youth). Paul Weiss taking the case seemed to be a big deal at the time.

The case was propelled into formation (with help from the Urban Justice Center) when I suddenly ran away (on 6/2/1998) from an all-boys facility operated by the Defendants. I was experiencing brutal abuse and ran away to seek help.

The Residential Treatment Center in which I was placed after my grandmother fell ill was in Dobbs Ferry, miles from the world of the Upper West Side in which I had been raised, and I was also effectively cut off from the people who were meant to be advocating on my behalf. There were no GLBTQ youth advocates up in Dobbs Ferry in those days, and even my Law Guardian, Betsy Kramer, was unable to reach me, or even to interview me in order to properly assess my situation. In addition, ACS staff also actively thwarted communication between me and my Law Guardian in order to cover up my ongoing abuse at the hands of lawyers and advocates.

1

I was only 11 years old, but it was clearly evident that I was being traumatized and needed specialized care. Through social workers at the facility where I was placed, I learned of the existence of a single ACS-run group home in New York City for Gay males ages 16-21. I took initiative and wrote to the director of the facility begging him to rescue me from my torturers. I still have this letter; I was barely 12 when I wrote it, with no hope in sight.

I was desperate to leave the upstate placement I was in, so much so that I attempted suicide because of all the abuse I was facing. It was clear--especially to other boys at the facility, that I was a Trans child, which put me at additional risk at the innocently-named "Children's Village" which was, in fact, notorious as one of the worst, most dangerous all male facilities in the New York City Foster Care system,).

When I ran away from the abuse upstate, I ran to the "Gay group home" I had learned of and which employed the director who I had wrote to asking for help. I was in awe of the other Gay and Trans teens. I stuck out though, as I tried to blend in (the facility was enormous), with my clearly baby looks. The staff uncovered my deception, and later contacted my Law Guardian, who secured an order preventing ACS from placing me back at the place where I had been unrelentingly abused, physically, sexually, and emotionally, for three years. The abuse I suffered was clear. All of this transpired in early June (2nd or 3rd) 1998, in an era when ACS had zero policies in place for protecting GLBTQ youth or families under its care.

My life has been defined by my Trans identity and the costs of treating the symptoms of my condition. These costs have either been a prohibitive factor in my care, and have left me poverty-stricken as an adult, having spent my own funds on expensive Trans related healthcare.

Litigation which lawyers are forced to bring on my behalf after Joel A the litigation, is evidence of the need for section 60 to apply to my requests for relief. The Defendants actions were simply outrageous.

I am also the plaintiff in the case **Jean Doe v Bell**, a landmark case in which Trans people were granted the only NYS protections to date, when a state Supreme court justice ruled that ACS had violated NYS HRL (directly after Joel A), ruling that Gender dysphoria should qualify as a Disability under the state HRL after ACS prohibited me from 'wearing female clothing" in a male facility. It bears repeating that, to this day, there are no other NYS wide legal protections for Trans individuals barring discrimination, apart from the protections incurred by Jean Doe v Bell bestowing rights under the HRL.

I am also the plaintiff in the landmark case **Lopez v Mattingly**; a NY County Family Court case that had enormous legal implications not only on the foster care system, but on NY's Medicaid program. Because of Lopez v Mattingly, ACS was forced to cover all Trans-related medical expenses approved and recommended by a child's treating physician; as does Medicaid now (ACS via the Law Dept had asked the court to rely on the Federal prohibition of Medicaid funds

for Trans related care, arguing that Trans care was "experimental, risk, and not medically necessary").

My case shattered Medicaid's chances of continuing to refuse to cover care when world experts supported the medical necessity of gender-affirming treatments and procedures. Medicaid's regulations and the laws ACS cited were written in the 1970's.

There is no way Paul Weiss, Rifkind and Garrison (or this court) can assert that my "trans" identity was not apparent and relevant in terms of what was fair in any future settlement. How much of what was considered fair or not given the financial needs of Trans youth versus cis youth should have been a motivating factor for counsel to demand the highest amount possible. The fact that I was outwardly Trans mattered, because it was causing problems for me, and most of these problems came with a price tag.

Female clothing, specialized therapy, medical care, these were things that I needed as a child which the Defendants refused to pay for; and which my lawyers at the time failed to foresee, to my great detriment. I spent years fighting over approval of funds for my Trans care -- care which had already been presented to the Defendants and at least a few staff attorneys from UJC.

The ongoing violence that I was experiencing at the time of the settlement should have halted any settlement negotiations or Federal court proceeding not related to addressing the immediate abuse.

And not only was I experiencing the harsh and brutal violence and mistreatment while the settlement talks were underway, but it was also the court's role to keep the interests of minor children at the forefront, however complex things may become legally.

Why didn't the court say "Where are these children, and are they safe from harm?" regardless of the status of the legal case?

Next Friend and lawyers from Paul Weiss seemed to be unaware of the abuse I was experiencing, or, even worse, just dismissed it as relevant in my agreeing to settle in an informed and equitable way.

I was being brutally abused because of my gender expression and Trans needs related to medical care, to the point of near criminality on the part of the adults involved. This is a fact. I was routinely, punched, slammed to the ground and suffocated; contorted in 'restraints' until screaming in agony for my own death; all because I refused to act like a "male."

I was then placed in an all-male Non-Secure Detention facility (Cattaraugus Residential Center) operated by the Defendants OCFS. I tried to kill myself after being severely beaten upon arrival, literally moments after I entered the facility. To make matters even worse, I was actually assaulted by staff because of my Trans identity moments after I arrived.

Louis Sartori, now head of Pro Bono Services at the Legal Aid Society was my Guardian, representing me in the criminal matter (prostitution) at the time of the settlement for Joel A, but it was the Next Friend and the court's job to ensure that, at a bare minimum, the child plaintiff that Mr. Sartori was appointed to look after, was not STILL being abused.

The level of abuse I endured because I refused to "be male" is almost unspeakable and is well-documented. Furthermore, Louis Sartori, a trusted attorney, can attest to the exceptionally cruel and brutal nature of the abuse I suffered before, during and after the settlement was finalized by this court.

Moreover, the fact that I was already clearly Trans, needed to be factored into any authorized settlement talks by counsel on behalf of the class, since, unlike the needs of Gay and Lesbian youth who are not gender non-conforming, Trans youth often require medical treatment and other care that is far more complex and costly than the policy changes and other "free" reform negotiated under Joel A for Gay and Lesbian youth. Joel A was not fair or intelligently representative of Trans youth issues, including the lead Plaintiff.

As for my "Next Friend," Jonathan Cole, who was entrusted to keep me from harm, I only remember meeting him once, at a meeting at either Paul Weiss or UJC. He never inquired as to my well-being during the time of the settlements or directly afterwards, nor did he attempt to aid me in seeking judicial relief within the Family Court by preserving my claims or leaving the class to pursue claims in Federal Court. He simply did not do his job (if he had he would have been compelled to act).

Due to my age and that of the other minors under his charge, Mr. Cole, as well as the court, had a statutory obligation to "care" where and how all the plaintiffs were, as well as the many other Queer youth in care.

The Court and Paul Weiss, including and especially the Next Friends for the youth, did not fulfill their legal obligations to the minor children in this case/class, and therefore the relatively small amount of money paid by the Defendants should not give this court pause to consider allow this case to be reopen given the glaring and documented statutory failures by the court and counsel for the class in this case. *

ACS and OCFS did knowingly abuse me and others during the period which the class was represented by Paul Weiss. This can be proven.

There is medical and photographic proof, journalistic accounts, including books and Family court records that prove the exceptional nature of the abuse I experienced, because I was Trans. This all occurred during the period during which Dr. Jonathan R. Cole should have immediately alerted the court or Paul Weiss of the abuses I was still suffering (as a potential violation of the settlement, or, just because it was the right thing to do).

4

The sole reason I left the facility I was in was because of the nightmarish situation in which I found myself, and it appears that the Defendant's agents so feared a letter documenting my abuse reaching the outside world, that they tampered with my mail for months when I tried to contact Mr. Sartori, the court, or anyone, about the abuse I was experiencing.

Eventually, a sympathetic staff member snuck a letter out and mailed it on my behalf to the Family Court Judge who had presided over my case and sentencing. The Judge immediately ordered me to be produced, and, having spent months leading up to my sentencing ordering DJJ/OCFS to cease all abuse and restrictions related to my Trans identity, (order by order: Medical treatment related to the child's Transgender diagnosis; The child is to be referred to as she/her/Mariah, except on legal documents when required to use her given name; child is exempt from mandate for all 'males' to have their hair cut upon arrival at OCFS), the Judge was not pleased when he learned of the level of trauma and duress I was under due to my Trans identity.

The exceptions to policy and medical care he ordered at the time was, and still is, considered landmark.

The Joel A case had become a central part of my case as well as the Judge's clear message to ACS and OCFS: "I do not want to keep her in OCFS, she is a child, not a criminal, and she is facing real, apparent abuse because she is Transgender."

He made clear his intention to release me the second there was a "safe" place for me outside of OCFS. This meant if Joel A wasn't approved, I would be forced to stay in OCFS custody.

To keep me safe, and to keep me in reach of Legal Aid, and hopefully of doctors for my Trans-related care, the Judge issued an exceptional order when he learned of the Defendant's conduct, directing them to place me in the Bronx until the first group home (which was, in fact a direct result of the settlement in the Joel A case) was opened.

There is much documented proof of the exceptional nature of the proceedings in Family Court sparked by the abuse I suffered at the exact time Joel A was being settled.

I would later become the first resident to walk into the new "GLBTQ" group home opened by the Defendants as a settlement piece of Joel A. The paint was literally still wet when I got there, demonstrating the urgency of getting me released from OCFS custody. There was a clear link between the rush job to open the facility and further or ongoing (at the time) acts by the Defendants.

Shortly after arriving at the new group home, several other residents and I were sexually assaulted by a male staff member. The agency fired the person soon after. ACS was aware of the incident, and the fact that it was (or should have been) a clear violation of the settlement; Marisol or No Marisol. Joel A had alleged sexual assault of minor children by adults or youth who specifically target gender non-conforming kids due to their sexuality or gender expression.

The Defendants had, in fact invited the monsters into this new space which was supposed to be safe and even empowered them.

For my own safety, I ran away and began to buck the poorly-trained and abusive staff of this new program. I was further triggered to run away after learning that OCFS intended to revoke my release and send me back to the hell of abusive incarceration.

Jennie Casciano, a constant protector and advocate in my life at the time (and still) then introduced me GLBTQ rights and Stonewall pioneer Sylvia Rivera, as a way of providing an alternative placement option in Family Court. The hope was for Sylvia to take me in as a foster child.

Sylvia and I bonded as soon as we met, and she named me her "daughter," which is a well-established Trans cultural custom.

Despite being victimized at this new group home (which was supposed to be safe) the judge sent me back into OCFS custody where the pattern repeated itself, with the Defendants continuing to abuse me. The Judge finally lost his patience and released me altogether from OCFS custody. My Trans identity and lack of medical treatment was what lead to the conditions being unbearable, and the judge had mercy on me.

Paul Weiss, Rifkind Wharton & Garrison, as well as my Next Friend conducted proceedings under the supervision of this court, only mere feet away from where Legal Aid and Lawyers for Children were arguing vigorously and successfully for the Defendants to cease outrageous abuses, and to provide appropriate medical care based on my Trans (Gender Identity Disorder) diagnosis.

It was not the job of LFC or LA to coordinate with counsel for the Plaintiff or class, if and because the conditions I was facing at the time were abhorrent. LFC and LA's job was to litigate in Family Court, which they did, winning virtually all relief related to Trans care they sought on my behalf. This demonstrates the lack of legally-required involvement in the lives of the youth on the part of the Next Friends at the time of the settlement. Why he didn't catch all of this? Where was he at the time that all of this abuse was taking place?

If Jonathan Cole had done his job and established contact with me, I would have been able to tell him what was happening, and he would have been bound by law to contact my lawyer, Louis Sartori, the lawyers at Paul Weiss, and the court. The court would then have learned of my situation, and I might have been taken out of the hell I was living in sooner than I was.

Since age 12, my issues with the Defendants have been rooted in their refusal to accept and support my medical Transition and care related to my being Transgender. The case was settled when I was 14.

The fact that this care and treatment costs money, and that I lacked both the funds and the legal authority as a minor to access said care, meant I was forced to turn to the Defendants for my basic care. This needed to be worked into the settlement as a legitimate foreseeable burden for the child.

The fact that, as a Trans teen growing into a Trans young adult, I would require expensive medical care not covered by ACS, and beyond the poultry $15,000 awarded to the Joel A Plaintiffs, should have been obvious to my Next Friend.

Because of Mr. Cole's failure to recognize and address the special circumstances, needs, and unique financial challenges faced by me and other trans youth in his care, the Joel A. v Giuliani case was settled without providing for our needs. As a result of the decisions in my two later cases (Lopez v Mattingly and Jean Doe v Bell) Trans youth in care now have access to hormones, surgery, and other medical treatments that Gay and Lesbian youth do not require, but, ironically, because of the timing of these cases, and Mr. Cole's failure to anticipate and provide for my best interests, my expenses where not covered, resulting in a cycle of poverty in which I have been caught ever since.

Due to the unique (and undeniably, extraordinary) circumstances described above, I respectfully request that the court entertain oral arguments and/or further legal briefs on the issues of fact and law raised in my current motion before it.

Mariah Lopez, fka Brian Joel Lopez

Plaintiff

June 12th 2018